IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| GOVERNMENT OF THE VIRGIN ISLANDS<br><br>    v.<br><br>JONATHAN COHEN,<br>                       Defendant | Case No. 1:14-CR-41<br><br>MOTION TO DISMISS<br><br><br>**HEARING REQUESTED** |

<u>**MOTION TO DISMISS**</u>

      In the event that the government persists in its uniform breach of contract by refusing to permit the defendant to plead guilty (under essentially the same terms that it has always wanted from the defendant), then the case must be dismissed from the cumulative instances of prosecutorial misconduct. An indictment may be dismissed with prejudice under either of two theories:

      First, a district court may dismiss an indictment on the ground of outrageous government conduct if the conduct amounts to a due process violation. Second, if the conduct does not rise to the level of a due process violation, the court may nonetheless dismiss under its supervisory powers. *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991).

      Most of the cases that judges have dismissed for prosecutorial misconduct involve presentation of false evidence, violations of the *Brady v. Maryland* doctrine, or for cumulative misconduct. In the instant case, the cumulative misconduct that this government has exhibited towards the Defendant shock the conscience, have resulted in due process violations, seriously compromise his ability to get a fair trial, seriously compromised his right to effective assistance of counsel and demonstrate that there has been an arbitrary singling out of this defendant for harsher treatment than any other similarly situated taxpayer, and more importantly seem to increase with each proceeding leading up to trial. This flagrant and repeated misconduct which has resulted in actual prejudice is listed below:

1. The BIR initiated a civil process (actually an informal administrative process) with the co-operation of Jonathan Cohen and his entities, the Defendants herein, to achieve tax compliance.  Under IRS uniform policy, followed by the BIR under the mirror code, a civil tax matter only becomes criminal when there is a clear indication of fraud.  Despite the fact that there was no such indication of fraud, the BIR converted the civil process to a criminal process.  This fact is undisputed.

2. The criminal agents took information that the Defendant provided in the informal administrative process and used this information to get the Defendant to produce tax returns that have been used against him in the criminal case.  This fact is largely undisputed because it is clear that Wagner knew to ask Cohen for these returns (and the government witnesses testified that they usually did not come across situations where defendants prepared but did not file returns).  Defendant alleges that this act violated the Tweel doctrine, i.e. the government cannot obtain information from a taxpayer under the premise that the matter is civil and then use it against him criminally.  A violation of the Tweel doctrine alone violates substantive due process and can alone result in a dismissal.

3. The criminal agents did not advise Cohen that they were conducting a criminal investigation.  This fact is in dispute.  Wagner and Claxton claim that they did advise Cohen of the criminal investigation and the Court must make a factual finding in this regard.  However, the testimony they gave about the arrest was so troubling from a credibility standpoint that the Court is in a position to reject every part of their testimony on credibility grounds.  In addition, these witnesses seem to have key memory lapses.  For example, Wagner does not even remember the sequence of the events leading to the arrest.  The "arrest team" went to Cohen's house to arrest him and when he was not there they proceeded to his office.  Wagner has no memory of ever going out to Cohen's house so with Wagner there are two problems:   1. Credibility and 2. Memory failure.

4. Cohen provided the returns he had shown Anderson and Nesbitt to Wagner and Claxton.  Cohen

further discussed the fact that James Sheets was his accountant and the one he had hired to prepare his returns.   Use of this information was a violation of the *Tweel* doctrine.   Moreover, the criminal agents committed their second law violation with respect to their use and acquisition of this evidence by illegally issuing a summons to Sheets in violation of 26 USC 7602(d)(1).   At a minimum this was an abuse of process and Wagner testified that he was aware of this law and sought to distance himself from Claxton's action when, as he claimed, she issued the summons.   As indicated in the Opposition we filed on May 18, 2015, the government (both prosecutors and their agents) are completely unapologetic for this law violation and seem to think it has no import because when they claim that they could not get the information with a summons they then issued a subpoena.   It is important to note that they did not withdraw the summons for legal reasons but for tactical ones.   Despite the fact that they knew it was illegal to issue a summons after a criminal referral, they issued new summons to Sheets and to Banco Popular.   The government's conduct in this regard was flagrant and is part of an egregious pattern of illegal conduct they have engaged in against this defendant.   This fact is undisputed.

5. Despite the fact that the Defendant was cooperating with the Government of the Virgin Islands, the government decided to apply for an arrest warrant, based on information it had learned through its violation of the *Tweel* doctrine.   This fact is also largely undisputed.

6. The "Arrest Procedure." Defendant's version: The government created a subterfuge by telling the Defendant he needed to go with the agents to the courthouse to provide information about when the returns would be filed.   They offered to drive him because his car was unavailable.   They told him it would take ten minutes.   Prosecutor's version: Agents advised him that he was under arrest and arranged for transport.   Undisputed facts: Agents (after claiming that they had arrested him) did not search him or handcuff him.   They did not take control of his person (the definition of both arrest

and custody). They permitted him to leave their presence and to leave the building unescorted. They did not search him prior to his entering Agent McCall's government vehicle. They did not handcuff him. They were aware of officer safety protocols. When they arrived at the courthouse they handcuffed and searched him. Conclusion: Under either version of the facts the arrest procedure violated all law enforcement protocol and raises serious issues about the credibility of the agents' testimony which is already under serious dispute.

7. The Attorney General and the Director of the BIR issued a joint press release wherein they committed a felony, a violation of 26 USC § 6103, the disclosure of taxpayer information. This is undisputed that the press release was a volitional act of the prosecutor's officer. BIR Director Claudette Anderson tried to distance herself from that saying it was the prosecutor that did this. Wagner and Anderson testified falsely on May 12th that 6103 only applied to tax officials. It does not – it applies to all agents of the government and the prosecutor has no immunity for violating this law (prosecutorial immunity only applies to acts of prosecution and never immunizes prosecutors for statements to the media). The statute provides that returns and return information shall be confidential, and (1) no officer or employee of the United States and (2) no officer or employee of any State, any local law enforcement agency receiving information under subsection (i)(7)(A), any local child support enforcement agency, or any local agency administering a program listed in subsection (l)(7)(D) who has or had access to returns or return information under this section or section 6104(c) shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section. For purposes of this subsection, the term "officer or employee" includes a former officer or employee. All of the Defendants are covered by this statute and the BIR officials are covered twice in that this statute is mirrored for purposes of BIR's tax collection authority, and they are "state

officials" for the purposes of 6103. Return and return information have broad meanings under the statute and even include the identity of a taxpayer. For example, 6103(b)(2)(a) states: The term "return information" means-- (A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, over assessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense…. Anderson and Wagner each testified under oath that they were familiar with this law and that while there are exceptions to this law, there is no exception for press releases. Moreover, there is no exception to 6103 that would ever permit a prosecutor or other government official to say: OWNER OF BIGGEST RADIO STATION ON ST. CROIX ARRESTED FOR FAILURE TO FILE AND PAY TAXES FOR SEVERAL YEARS. Under no circumstance and under no exception to 6103 would this statement be permissible. Violation of 6103 is a felony and requires automatic firing of any IRS agent who willfully violates this statute.

8. While the commission of a felony by government officials to buttress its misdemeanor prosecution of the defendants is of course a significant example of prosecutorial misconduct the violation of 6103 is not the most egregious offense committed by the government with the press release. If commission of a felony were not itself enough to cause dismissal of the case, the purpose behind the commission of this felony is more troubling. By leading with this headline there is only one obvious conclusion to the government's press release: it wanted to so prejudice the entire community against the Defendant that the Defendant would have no ability – or at best – a limited opportunity to have a

fair trial. The fact that the press release occurred is undisputed.

9. The government compounded its sins by having a reported in attendance at the first appearance (an appearance it orchestrated and scheduled). Further damaging articles in the press followed making it even more difficult for defendant to get an unbiased jury panel. The fact that the government arranged to have a reporter in the courtroom appears in Cohen's declaration and was not disputed by the government at the hearing.

10. The government's presentation of false evidence on May 12, 2015: At the motions hearing, the government submitted false evidence for the purpose of getting the Court to destroy the Defendant's credibility. The assault on the Defendant's credibility is, perhaps, the most frightening action of prosecutorial conduct to date. As the Court is aware, the Defendant has always been willing to take responsibility and to enter a guilty plea. While the two sides have had disagreements on the details of that plea (particularly concerning 3711(c) treatment)), the defense has always assumed that the Defendant would appear before this honorable Court for sentencing at some point in time. If the government could present credible evidence that the Defendant has been untruthful and has lied under oath, simply put, all is lost for this Defendant. But instead of offering truthful evidence to try to establish that the Defendant was untruthful, the government offered decidedly false evidence through a witness that it subpoenaed and called. The Defendant reproduces herein what it filed in its Opposition on May 18th for the purpose of demonstrating these undisputed facts:

While there were many instances of false evidence presented at the motions hearing on May 12th, defendant points out only one in the filing of this motion to support the statements made in the preceding paragraph. The Court may recall that the government voluntarily called BIR Agent Nesbitt to the stand to refute the statements defendant made under oath in his Declaration. Agent Nesbitt was very specific in her testimony and claimed that Jonathan Cohen never followed up with her after the meeting he had with Ms.

Nesbitt and BIR Director Claudette Anderson.   Ms. Nisbett's answer was definitive:   1. There was no exchange about a phone service issue at BIR and the witness claimed she never apologized to the defendant for the phone system problem; 2. There was no follow up from Jonathan Cohen.   This evidence offered by the government of the Virgin Islands was false:

From: ynisbett@irb.gov.vi
To: JKC95@aol.com
Sent: 2/28/2013 8:07:55 A.M. Atlantic Standard Time
Subj: RE: Tried reaching you-Jonathan Cohen

Good morning,

Please excuse our phone system. It is a work in progress. I will be in the ST. Croix office today. Please let me know what time you would be available.

*Yvonne Nisbett*
*4008 Estate Diamond, Lot 7-B*
*Christiansted, V. I. 00820*
*Phone: 340-773-1040 ext. 4250*
*Fax:    340-773-1006*
*Email ynisbett@irb.gov.vi*

**From:** JKC95@aol.com [mailto:JKC95@aol.com]
**Sent:** February/2013 1:05 PM
**To:** Yvonne Nisbett
**Subject:** Tried reaching you-Jonathan Cohen

**Good afternoon Ms. Nisbett**
**I tried leaving you a message at extension #4250 a few minutes ago but it just rang and did not go into any voicemail.**

**I have checks for you and also an update on my returns as I have made contact with the accountants office.**

**I will tell you tomorrow when the updated returns will be filed.**
**I am out this afternoon as one of our transmitter sites was severely   vandalized and we have been off the air since Monday morning. I am expecting all repairs to be completed by late this afternoon, and I am also down with a sore throat, but working to get the station on the air.**

**If tomorrow is acceptable I would like to meet. You may contact me by e-mail or cell at 340-690-0995. Sorry for the delays, but I am attempting to keep my commitments to you and Claudette. I hope you received my message yesterday.**

**Thanks Again**

Jonathan Cohen

Please note that Ms. Nisbett's email is dated February 28, 2013 and it includes and references Mr. Cohen's email which discusses "updated" returns, thus giving credence to Defendant's testimony that he had provided unfiled returns to Anderson and Nisbett. The totality of government witness testimony was very troubling. All definitively denied that he had provided returns to Anderson and Nisbett but somehow Wagner knew to ask Cohen to bring those returns into Wagner's office (which everyone agrees Cohen did). Then there is the very difficult to believe testimony that he was arrested but released to go out the back door of his office without being chaperoned by one of the arresting agents. Despite the fact that every law enforcement agency in America, for officer safety reasons, has a policy of handcuffing arrestees while transporting them, these agents want the court to believe that they arrested him first, allowed him to leave the building on his own and get in a government car for transport unfettered. Given the fact that their claim that he did not follow up with the BIR has now been completely contradicted, none of their evidence based on questionable practices is worthy of belief.

11. The government breached its contract with defendant when it signed a plea agreement and then filed a "Notice" that it had "withdrawn" the offer to settle the case.
12. The government committed a fraud on the court in doing so. On May 12th, in chambers, the Court questioned the prosecutor concerning the binding nature of this agreement. The prosecutor assured the Court that the agreement would be honored by the prosecution. The Court inquired as to the authorization of the plea offer. In the May 16th "Notice" a new prosecutor now claims that she had told the other prosecutor to withdraw the offer. One of these two prosecutors is not being straight with the court, resulting in a fraud on both the Defendant and the Court. Based on information and

belief, the undersigned has no reason to question the authenticity of Attorney Count's representations to the Court in chambers.   Attorney Counts and the undersigned have been engaging in plea discussions for the last month and at no time has Attorney Counts stated to the undersigned that the plea offer was withdrawn.   Undersigned counsel can represent that despite disagreements with Attorney Counts, Attorney Counts has been honorable in her dealings with defense counsel despite the many instances of misconduct cited herein.   Undersigned counsel wants to make it clear that while there have been these many instances of misconduct, the misconduct has occurred in most instances at a higher level.   In the dismissal for prosecutorial misconduct the cases and sanction are much more severe in the rare instances where judges have found that the misconduct was office wide or occurred at the supervisory levels.

13. The Attorney General's office has committed a number of violations of the Rules of Professional Conduct. V.I.S. Ct. R. Rule 211.3.8(f) states that prosecutors shall "refrain from making extrajudicial comments that have a substantial likelihood of heightening public condemnation of the accused".   The Attorney General's office has not missed an opportunity to violate this rule in this proceeding. Attorney Counts represented to this Court that she had the authority to enter into a plea agreement in this matter when her boss now claims that she did not, in violation of V.I.S. Ct. R. Rule 211.3.3(a)(1). Undersigned counsel does not believe that Attorney Counts violated this rule.   Rather, it is more likely that the fraud committed on the Court was by the one who is now claiming Attorney Counts was without authority.

In connection with point 8 above, the government through its 4/23/14 press release caused this case to be extremely high profile (whereas normally a misdemeanor failure to file case would not generate publicity on its own).   As a consequence the fact that the Defendant signed a plea agreement became a front page news story and the government prosecutor was quoted in the news story about the plea.   Now that the

entire community knows the defendant has agreed to plead guilty, how in the world can he get a fair trial, if the withdrawal of the plea is allowed to stand?   Point 13 is an extension of Point 8, infra and has been compounded with the highly unusual withdrawal "Notice.".

The cumulative nature of the prosecutorial misconduct set forth in the preceding 13 paragraphs exceeds the misconduct in many of the cases where courts have dismissed indictments based on prosecutorial misconduct. A district court may exercise its supervisory power "to implement a remedy for the violation of a recognized statutory or constitutional right; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and to deter future illegal conduct." *United States v. Simpson*, 927 F.2d 1088, 1090 (9th Cir. 1991).

In *Centex v. United States*, 395 F3d 1283, 1304-5 (Fed. Cir. 2005), the Federal Circuit spoke definitively on the federal government's obligation to deal in good faith in contract matters:

> "The covenant of good faith and fair dealing is an implied duty that each party to a contract owes to its contracting partner. The covenant imposes obligations on both contracting parties that include the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract. Restatement (Second) of Contracts, § 205 (1981); 13 Richard A. Lord, Williston on Contracts § 38:15, at 437-38 (2000); M/A-COM Sec. Corp. v. Galesi, 904 F.2d 134, 136 (2d Cir.1990); Polito v. Continental Cas. Co., 689 F.2d 457, 463 (3d Cir.1982); Concrete Specialties v. H.C. Smith Constr. Co., 423 F.2d 670 (10th Cir.1970). The duty applies to the government just as it does to private parties. Rumsfeld v. Freedom NY, Inc., 329 F.3d 1320, 1330 (Fed.Cir.2003); Essex Electro Eng'rs, Inc. v. Danzig, 224 F.3d 1283, 1291 (Fed.Cir.2000); Malone v. United States, 849 F.2d 1441, 1445, modified,857 F.2d 787 (Fed.Cir.1988)."

*Id.* at 1304-5.

Despite the fact that the government is also required to deal in good faith, the government actually has greater responsibilities to a defendant than the defendant has to the government. "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, …. is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor -- indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88 (1935).

The federal courts have also been very clear about the imbalance that occurs when the IRS uses oppressive tactics against taxpayers, commenting on the government's duty to "turn square corners" with its citizens:

> "The government wants the taxpayer to come forward in good faith, waive its Fourth Amendment rights in the production of its most private papers, in the hopes of receiving a fair, open and honest assessment of its tax investigation. As the Sixth Circuit has observed in an Internal Revenue Service summons case: "When the plaintiff voluntarily complied with the Internal Revenue Service summons, it had the right to expect fair treatment in return. See St. Regis Paper Co. v. United States, 368 U.S. 208, 229, 7 L. Ed. 2d 240, 82 S. Ct. 289 (1961) (Black, J., dissenting) ("It is no less good morals and good law that the government should turn square corners in dealing with the people than that the people should turn square corners in dealing with their government"); Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 387-88, 92 L. Ed. 10, 68 S. Ct. 1 (1947) (Jackson, J., dissenting) ("It is very well to say that those who deal with the Government should turn square corners. But there is no reason why the square corners should constitute a one-way street.")."

*Vaughn v. Baldwin*, 950 F.2d 331, 334 (6th Cir. 1991).

The Seventh Circuit Court of Appeals vacated a conviction obtained against a Defendant when the prosecutor misrepresented the Defendant's eligibility for "safety valve" treatment in a plea agreement. *United States v. Grimm*, 170 F.3d 760 (7th Cir. Wis. 1999). Likewise the Ninth Circuit overturned a conviction on a habeas petition because the prosecutor misrepresented whether the Defendant would be able to serve sentences concurrently. *Gunn v. Ignacio*, 263 F.3d 965 (9th Cir. 2001). The *Gunn* decision has been adopted in

the Third Circuit, resulting in the granting of a habeas petition when a Defendant pled guilty to a state law conspiracy charge because of a "mutual mistake" of the prosecutor and the Defendant. *McKeever v. Warden, SCI Graterford*, 2005 U.S. Dist. LEXIS 5240 (E.D. Pa. Mar. 23, 2005).

In this instance the Virgin Islands has persistently engaged in conduct that shocks the conscious, and the most recent issue with the withdrawal of the plea agreement is the latest indication that the prosecution in this matter has no interest in the rights of the Defendant, and is seeking to obtain improper remedies against this Defendant at all costs, even to the point of engaging in felonious conduct. In order to preserve justice, the Court should, in this instance, dismiss the complaint against the Defendant to deter such future illegal conduct against the Defendant.


Respectfully submitted this May 19, 2015
**ILP+ MCCHAIN MILLER NISSMAN**

\_\_\_\_/s/ David Marshall Nissman_____
David Marshall Nissman
53A Company Street
Christiansted, USVI 00820
Tel:  (340) 719-0601   Fax:  (340) 719-0602


## Certificate of Service

I certify that on May 19, 2015 I electronically filed the foregoing **MOTION TO DISMISS** with the Clerk of Court, using the CM/ECF system, which will send a notification of such filing to:

**Denise George-Counts**
**Department of Justice**
34-38 Kronprindsens Gade
GERS Bldg., 2nd Floor
St. Thomas, VI 00803
Phone: 340-774-5666
Fax: 340-776-3494
dcounts@doj.vi.gov

**Terri L. Griffiths**
**Department of Justice**
P.O.Box 8647
St. Thomas, VI 00801
340-774-5666
Email: terri@griffiths-law.com

                                          _/s/_____David Marshall Nissman_____
                                               David Marshall Nissman